CARAWAY, J.
 

 hln this trip and fall ease, the trial court granted summary judgment in favor of the defendants after finding that an unpaved parking lot did not present an unreasonable risk of harm. With the mixed question of law and fact presented for the inquiry concerning an unreasonable risk of harm, we find that material issues of fact remain. The judgment on the motion for summary judgment is reversed, and the matter is remanded to the trial court for further proceedings.
 

 Facts
 

 The Jungle Gym, L.L.C. (“Gym”), located in West Monroe, Louisiana, provides an indoor playground with games and activities for children. Gym leased its building from Laura and Jesse Wied. Two parking lots were provided under the lease for Gym’s customers, as well as customers of adjacent businesses. The first parking lot, located closer to Gym, was concrete and paved. The second lot was unpaved and consisted of dirt, grass, rock, gravel and crushed asphalt. Patrons utilized the second parking lot when the first, paved lot was fully occupied.
 

 On the afternoon of October 7, 2006, Lisa Beckham (“Beckham”) took her two children to play at Gym. Beckham was accompanied by her brother, Danny E. Purcell, and his son. Beckham parked her vehicle in the gravel parking lot on a sloped area because the paved lot was full. The family then proceeded to Gym where the children played for several hours.
 

 Upon returning to the vehicle, Beckham went around to the rear of the car to retrieve snacks and drinks from an ice chest located in the trunk. LAs she walked back around toward the vehicle’s driver-side door, she fell over chunks of asphalt. This caused her to fall to the ground and slide down the sloped surface
 
 *566
 
 of the parking lot. Beckham’s injury was reported to Gym employees and an occurrence report was filed. Beckham was taken to the hospital, where x-rays revealed a broken right ankle.
 

 At the time of the accident, Beckham was holding her purse in one hand and a soft drink in the other. She was wearing slipper type tennis shoes, with no laces and an open back.
 

 As a result of the accident, Beckham instituted suit against Gym, as the lessee of the property, and against Jesse and Laura Wied, as lessors. Both Gym and the Wieds filed separate motions for summary judgment, each denying custodial responsibility and asserting that the parking lot in question did not pose an unreasonable risk of harm. By joint stipulation, defendants restricted their pending motions to the determination of whether the parking lot created an unreasonably hazardous condition as required by La. C.C. art. 2317.1 and thereby pretermitted the question of custody and/or maintenance responsibility.
 

 In opposition to the motion for summary judgment, Beckham submitted her deposition testimony, along with photographs of the parking area.
 
 [1]
 
 The following represents Beckham’s testimony regarding the area where the accident occurred:
 

 |SQ: After you fell, did you look to see what you had tripped on?
 

 A: Yes, Sir.
 

 Q: And what did you think you had hit to trip on?
 

 A: I landed right on top of all that loose chunks of pavement.
 

 Q: Do you remember what color these loose chunks were?
 

 A: Black. Blackish-gray.
 

 Q: Like asphalt colored?
 

 A: Yes. Like blacktop chunk, yeah.
 

 Q: Okay. Was there more than one black chunk that you’re describing there where you fell?
 

 A: Oh, yes, sir.
 

 Q: There were several of them?
 

 A: There were several.
 

 Q: Okay. Could you tell exactly which one you fell on?
 

 A: My — -my foot was right there at the big — big one, and then there was several little ones right there.
 

 Beckham was additionally shown photographs of the parking lot and asked to circle the area where she felt she tripped that day. She complied and circled an area appearing to consist of loose asphalt of varying sizes. She was able to identify the area with reference to where she parked, “I was up on the slope right there by the edge of the grass.”
 

 The affidavit of Dennis R. Howard, a board-certified safety professional, was additionally submitted by plaintiff in opposition to the motions for summary judgment. Howard’s affidavit revealed that on August 6, 2008, he personally inspected and photographed the scene of the |4accident. At the time of the inspection, Howard asked Beckham to position her car as it was parked at the time of the accident. Beck-
 
 *567
 
 ham affirmed that the area had not been substantially or materially changed or altered between the time of the accident and the time of the inspection. Howard noted that the parking area was “sloping dirt covered ground with ground up asphalt and gravel.” He took measurements of several chunks of asphalt, varying in size from 4 to 10 inches and projecting 2 to 2½ inches above the surrounding surface. Howard’s affidavit indicates that these asphalt chunks were difficult to see because their color and texture caused them to blend in with the surrounding asphalt. Howard ultimately found that the size, shape and color of the chunks of asphalt encountered by Beckham posed a significant risk of fall and injury to persons using the parking area and further concluded that these hazards could have been easily removed or distinctively marked to warn customers of their danger.
 

 After hearing arguments, the trial court granted summary judgment in favor of the defendants, finding that the condition of the parking lot in question did not present an unreasonable danger. Thereafter, this appeal ensued.
 

 Discussion
 

 We review the grant of a motion for summary judgment de novo.
 
 Schroeder v. Board of Sup’rs of Louisiana State University,
 
 591 So.2d 342 (La.1991);
 
 Steier v. Heller,
 
 31,733 (La.App.2d Cir.5/5/99), 732 So.2d 787. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together |Bwith the affidavits, if any, show there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 Affidavits in support of or in opposition to motions for summary judgment must be filed into evidence at the hearing on the motion or filed into the record in order for the affidavits to be part of the record on appeal. La. C.C.P. art. 966;
 
 Hutchinson v. Knights of Columbus, Council No. 5747,
 
 03-1533 (La.2/20/04), 866 So.2d 228. Expert opinion testimony in the form of affidavit or deposition may be considered in support of or opposition to a motion for summary judgment.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. However, issues of credibility cannot be resolved by the court in deciding a motion for summary judgment.
 
 Id.
 
 Rather, in deciding a motion for summary judgment, the court must assume that all the affiants are credible.
 
 Hutchinson, supra.
 

 If the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
 

 16The issues raised by the plaintiffs accident are governed by Art. 2317.1 of the Louisiana Civil Code. This article provides that:
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exer
 
 *568
 
 cise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
 

 Article 2317.1 actions require proof that the thing was in the defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect.
 
 Pamplin v. Bossier Parish Community College,
 
 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889,
 
 writ denied,
 
 04-2310 (La.1/14/05), 889 So.2d 266.
 

 There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify its potential harm to others.
 
 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174 (La.3/4/98), 708 So.2d 362. The determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically.
 
 Johnson v. Brookshire Grocery Co., Inc.,
 
 32,770 (La.App.2d Cir.3/1/00), 754 So.2d 346,
 
 writ denied,
 
 00-0938 (La.5/26/00), 762 So.2d 1107.
 

 The courts have recognized that it is common for the surfaces of streets, sidewalks and parking lots to be irregular and that it is not the duty of the party having garde of these locations to eliminate all variations in elevations existing along the countless cracks, seams, joints and curbs. These surfaces are not required to be smooth and lacking in deviations because such a requirement would be impossible to meet.
 
 Reed, supra.
 
 This fact alone, however, is insufficient to eliminate the defendants’ liability under the unreasonable risk analysis.
 
 Id.
 

 Whether a defect presents an unreasonable risk of harm is a mixed question of law and fact that is peculiarly a question for the jury or trier of the facts. It entails innumerable considerations; and, because it requires a balancing of the risk and utility of the condition, it is not a simple rule of law which can be applied mechanically to the facts of any particular case.
 
 Reed, supra.
 
 It is “a matter wed to the facts” and must be determined in light of the facts and surrounding circumstances of each particular case.
 
 Dupree v. City of New Orleans,
 
 99-3651 (La.8/31/00), 765 So.2d 1002;
 
 Waller v. Shelter Mut. Ins. Co.,
 
 41,215 (La.App.2d Cir.6/28/06), 935 So.2d 288.
 

 Defendants’ motions for summary judgment were based on the allegation that no genuine issue of material fact exists as to whether the parking lot presented an unreasonable risk of harm. Specifically, they argued not that the parking lot was without defect but instead, that the risk | ¿plaintiff encountered was obvious, universally known and easily avoidable and thus not unreasonably dangerous. Defendants point to the fact that Beckham was wearing slipper type shoes, while carrying items in both of her hands. Defendants additionally take note of the fact that no prior accidents have been reported relative to this particular parking lot prior to Beck-ham’s instant fall.
 
 [2]
 

 
 *569
 
 With the “mixed questions of law and fact” present for the examination for an unreasonable risk of harm, the legal side of that inquiry suggests that unpaved parking lots are expected to have variations and irregularities in their surfaces in providing social utility in many settings. From the factual side of the inquiry, however, a particular irregularity might be weighed by the trier-of-fact and found out of the ordinary so that a person might experience an unsuspected change in surface causing a fall. Thus, while loose gravel might be expected to be a feature that would seldom, if ever, present an unreasonable risk of harm, larger materials included on the surface might be less stable, posing an unsuspected trip or slip hazard.
 

 In this case, the features of the parking lot which Beckham asserts as unusual are the asphalt chunks and the slope of the lot at the place where she fell. The large chunks, 4 to 10 inches, exceed the size of gravel, allowing for a chunk to roll or be unstable when walked upon. The degree of the lot’s slope was not specifically addressed by defendants and remains IflUnclear. Circumstantially, the extent of Beckham’s injury suggests that an unusual feature was involved in the fall. The fact that she was in close proximity to her vehicle indicates that she may have been distracted. However, such distraction might be weighed as a factor which is expected and which should be understood by defendants in assessing the safety of the parking lot. In any event, regardless of the extent of any contributing fault by Beckham, the defendants’ duty to maintain the property so as to exclude an unreasonable risk of harm is not measured by any carelessness of the plaintiff in disregarding that risk.
 

 In
 
 Waller, supra,
 
 we determined that a “makeshift step” into a motor home where the plaintiff fell could not be properly assessed as posing an unreasonable risk of harm through a motion for summary judgment. The mixed question of law and fact there required facts to be weighed, allowing for the possibility of differing fact assessments and a genuine issue of material fact. While a gravel parking lot is generally better understood and its social utility clearly known, the particular facts of this parking lot will in our opinion be better assessed at a trial on the merits for the determination of whether an unreasonable risk of harm was present.
 

 Accordingly, the trial court’s determination through these motions for summary judgment that an unreasonable risk of harm was not present was in error, and the case is reversed and remanded. Costs of appeal are assessed to Appellees.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Three sets of photographs were submitted into evidence. On the day of the accident, after receiving medical attention, Beckham and her brother returned to the accident scene to take photographs. Because this first set of photographs was taken after it had already become dark outside, Beckham and her husband returned one week later to take additional photographs with increased clarity. The third and final set of photos was taken by plaintiff's safety expert. All three sets were available for summary judgment review. However, the appellate record contains only copies of the photos which are of poor quality-
 

 [2]
 

 . The affidavit of Kim Thomas, managing member of Gym, was submitted into summary judgment evidence to substantiate this claim. Thomas averred that she was un
 
 *569
 
 aware of any other falls in the parking area, other than the claim presented herein by plaintiff.