78 So.3d 791 (2011)
Jewel DOWDY and Jesse Dowdy, Plaintiffs-Appellants
v.
CITY OF MONROE and Monroe Civic Center, Defendants-Appellees.
No. 46,693-CA.
Court of Appeal of Louisiana, Second Circuit.
November 2, 2011.
*792 Richard L. Fewell, Jr., for Appellants.
Davenport, Files & Kelly, L.L.P., Monroe, LA, by Mike C. Sanders, Amanda A. James, for Appellees.
Before GASKINS, CARAWAY and DREW, JJ.
*793 CARAWAY, J.
In this trip and fall case, the trial court granted summary judgment in favor of the municipality after finding that the surface irregularity in a public parking lot upon which plaintiff tripped did not create an unreasonable risk of harm. The plaintiff appeals the judgment. Finding no issues of material fact, we affirm the trial court's finding that no unreasonable risk of harm was established.

Facts
The ArkLaMiss fair is conducted annually by the City of Monroe ("City") at the Monroe Civic Center and surrounding premises. On September 27, 2008, just before noon, while en route to the fair with her two sons and two preschool aged grandchildren, Mrs. Jewel Dowdy tripped over a patched hole in an asphalt roadway on the Civic Center premises and sustained numerous injuries to her hands, arms and right shoulder. At the time of her fall, Mrs. Dowdy's sons and grandchildren were ahead of her close to a sidewalk which led into the main building. Mrs. Dowdy was headed in the same direction as her family.
As the result of the accident, Mrs. Dowdy (hereinafter "plaintiff") and her husband[1] instituted suit for damages against the City on September 24, 2009. On December 16, 2010, the City sought summary judgment. The primary evidence in support of the City's motion were photographs of the asphalt-repaired hole taken by plaintiff's son six months after the accident. The City stipulated that the photographs depicted the area as it was on the day of the accident. An affidavit of the Assistant Director of the Civic Center was also submitted, stating that the subject area had not been significantly modified since the opening of the Civic Center in 1967 and no reports of any other accidents had been made. Finally, the City submitted the deposition of plaintiff in support of its motion.
In her deposition, plaintiff testified that she had been to the fair many times and had seen potholes in the parking lots around the Civic Center. She had never fallen or stumbled over a pothole before and she did not recall how the pothole "caught her foot," although she knew her foot tripped on something there. She did not see the pothole before because "the grandchildren were ahead" of her and she "was trying to keep an eye on them." She testified that if she had seen it beforehand, she would have avoided it and that if she had looked down she was "sure" she would have seen it.
The photographs depict the location of the fall as a previously patched three-foot circular area. The patch was an asphalt repair of a hole with deteriorating frayed borders that had cracked and broken off, creating a change in elevation. The repaired pothole was located on that portion of the parking lot which provided vehicular access between two parking areas. A sidewalk was located on the south front of the larger parking lot which led to the various entrances into the Civic Center. The area was used mainly for vehicular traffic. While the depth of the cracked edge of the pothole patch is difficult to discern from the photographs, for purposes of the summary judgment, the City stipulated that in accordance with one of plaintiff's photographs, the largest variance in the surface caused by the patch was 1-1/2 inches.
At the hearing on the motion for summary judgment, the City stipulated to all factual issues in a light most favorable to the plaintiff and argued that as a matter of *794 law, the "shallow imperfection" in the asphalt roadway was not unreasonably dangerous. The plaintiff argued that the issue of an unreasonable risk of harm was a factual inquiry which was inappropriate for summary judgment. In a written ruling, the trial court rendered judgment in favor of the City, finding that the social value and utility of the parking lot outweighed its potential harm to others and that the defect was open and obvious.

Discussion
We review the grant of a motion for summary judgment de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991); Beckham v. Jungle Gym, L.L.C., 45,325 (La. App.2d Cir. 5/19/10), 37 So.3d 564; Moore v. Oak Meadows Apartments, 43,620 (La. App.2d Cir.10/22/08), 997 So.2d 594. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C. P. art. 966(B). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. King v. Illinois Nat. Ins. Co., 08-1491 (La.4/3/09), 9 So.3d 780.
If the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
Plaintiff's claim is governed by Article 2317.1 of the Louisiana Civil Code. This article provides that:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Article 2317.1 actions require proof that the thing was in the defendant's custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect. Beckham, supra; Pamplin v. Bossier Parish Community College, 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889, writ denied, 04-2310 (La.1/14/05), 889 So.2d 266.
There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, *795 and thus justify its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362.
The courts have recognized that it is common for the surfaces of streets, sidewalks and parking lots to be irregular and that it is not the duty of the party having garde of these locations to eliminate all variations in elevations existing along the countless cracks, seams, joints and curbs. These surfaces are not required to be smooth and lacking in deviations because such a requirement would be impossible to meet. Reed, supra; Beckham, supra. This fact alone, however, is insufficient to eliminate the defendant's liability under the unreasonable risk analysis. Reed, supra; Beckham, supra. Not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Netecke v. State, through Dept. Of Transp. and Dev., 98-1182 (La.10/19/99), 747 So.2d 489.
Defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should have been obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff.
In determining whether a condition is unreasonably dangerous, courts have adopted a four-part test. This test requires consideration of: 1) the utility of the complained-of condition; 2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; 3) the cost of preventing the harm; and 4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature. Dauzat v. Curnest Guillot Logging, Inc., 08-0528 (La.12/2/08), 995 So.2d 1184. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner. Id.
In determining the reasonableness of a risk, the court must consider the broad range of social, economic and moral factors and the social utility of the plaintiff's conduct at the time of the accident. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Oster v. Department of Transp. and Dev., State of Louisiana, 582 So.2d 1285 (La.1991). One cannot be protected from all risks. The court must decide what risks are unreasonable. Graves, supra at 573.
The Louisiana Supreme Court has addressed the issue of the unreasonableness of conditions on a sidewalk and parking lot in the two frequently cited cases of Reed, supra and Boyle v. Board of Sup'rs, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080. Both cases were tried on the merits in the district courts.
Boyle reversed both lower courts' determinations that a 1/2 to 1-inch depression between side-by-side concrete sidewalk slabs created an unreasonable risk of harm. In finding that no unreasonable risk of harm existed, the court considered the substantial risk of harm caused by the depression, the small risk of injury due to the several years of heavy traffic in the location without reported injury and the social utility including the large cost to repair all or worse defects in the approximate 25 miles of sidewalks located at the university. In noting the courts' consistent holdings that state entities are not liable for every irregularity in a street or sidewalk, the court referred to its earlier decision of White v. City of Alexandria, *796 216 La. 308, 43 So.2d 618 (1949), which also reversed lower court determinations that a 1/2 to 2-inch depression between contiguous sidewalk slabs did not present an unreasonable risk of harm.
In Reed, the plaintiff tripped and fell on the expansion joint crack between two of the several concrete blocks which made up a store parking lot. The height variance between the blocks was 1/4 to 1/2 inch. Comparing the facts to Boyle, and considering the same factors as those considered in the earlier decision, the court determined that the height variance did not create an unreasonably dangerous condition.
In this summary judgment setting, the City has presented the evidence asserted by plaintiff in her deposition and the photos of the accident site which she obtained. Plaintiff obviously makes no assignment of error that her essential evidence presented in support of the City's motion raises any issue of material fact. The plaintiff does assert that the trial court improperly discounted the accident site as a seldom traveled area by pedestrians. With the Civic Center's use by the general public for this fair and other heavily attended events, we agree with plaintiff that the roadway in question between the parking areas would be expected to have a large amount of pedestrian traffic.
A review of the plaintiff's photos shows that the rough gravel/asphalt surface at the Civic Center is a typical level travel way for vehicles. Other nearby patched areas reveal that this was not the only asphalt patch of the roadway. The patched areas are clearly distinguishable in the roadway. The area in question had not been recently repaired as the traffic over the patch in question had caused multiple cracks around the edges of the circular patch. As seen in the photos, loose pieces of cracked asphalt were lying around the patch.[2] From the view of our highest court in Reed, supra and Boyle, supra, this is an irregular surface of a common asphalt parking lot/driveway which is not expected to be free from variances in the surface level.
In Reed, supra, the Supreme Court addressed the standard of appellate review for a trial court's determination of whether a condition of the thing or property presents an unreasonable risk of harm. A conflict among the circuits existed for review of verdicts after a trial on the merits regarding whether the legal and policy issues surrounding the risk/utility balancing test allowed the appellate court to be unrestrained by the manifest error rule and to decide the existence of an unreasonable risk of harm de novo. The court affirmed the application of the manifest error standard as follows:
In Tillman, we stated that whether a defect presents an unreasonable risk of harm "is a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." Tillman, 612 So.2d at 70 (citing to Entrevia, 427 So.2d 1146; Landry, 495 So.2d 1284; and Oster, 582 So.2d 1285). "The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically." Oster, 582 So.2d at 1288 (citing to Landry, 495 So.2d at 1287). The concept, which requires a balancing of the *797 risk and utility of the condition, is not a simple rule of law which can be applied mechanically to the facts of the case. Id. Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis. Additionally, an appellate court, reviewing a cold record, is not in the best position to weigh and evaluate the evidence presented and make this determination. Rather, the original fact finder, viewing live testimony and evidence, is best positioned to make a determination so heavily laden with factual issues.
Because a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard.[3]
Reed, supra at 364-365.
Reed was decided in a case fully tried on the merits. The trier of fact was presented disputed facts and then required to apply the risk/utility evaluation as the legal measure of those facts. Reed was not a summary judgment ruling. In the present case, the procedural rule of La. C.C.P. art. 966(C)(2) placed the burden upon the plaintiff to produce in opposition to the motion for summary judgment factual support different from the evidence of the City to show that a genuine issue of material fact exists. However, as shown above, the best evidence of the condition of the patched roadway is the plaintiff's photos of the accident site. That evidence along with plaintiff's testimony is fully before the court and undisputed. Thus, given the common condition of this public asphalt road and the simple explanation of the plaintiff's fall, this court, like the parties, cannot articulate a genuine issue of material fact for the trial court to decide to serve as a rationale for reversal in this case.[4]
Therefore, the question posed from the above quoted ruling of Reed is whether a decision concerning the existence of an unreasonable risk of harm for an alleged defective thing may never be reached by a motion for summary judgment. With summary judgment expressly "favored" "to secure the just, speedy, and inexpensive determination of every action" under the Code of Civil Procedure, we do not view Reed, which did not involve summary judgment, as a bar to summary judgment under these circumstances where no fact dispute is asserted. La. C.C.P. art. 966(A)(2). The court is charged legislatively by this favored procedure to determine *798 the legal significance of the undisputed facts.
A review of the jurisprudence reveals that the appellate courts have resolved on motions for summary judgment the issue of whether a condition presented an unreasonable risk of danger. In Llorence v. Broadmoor Shopping Center, Inc., 2011-233 (La.App. 3d Cir.10/5/11), 76 So.3d 134, the plaintiff was injured when she fell in a pothole in a shopping center parking lot. The defendant shopping center sought summary judgment urging that plaintiff could not satisfy her burden of proof at trial because she could not prove that the parking lot was defective or that her fall was the result of that condition. The trial court granted defendant's summary judgment. Based upon the photographs submitted by plaintiff into evidence and affidavits submitted by defendants stating that there had been no claims, complaints or suits arising out of the area, the court of appeal affirmed the summary judgment on the grounds that plaintiff had failed to establish a genuine issue of material fact with regard to the existence of an unreasonably dangerous condition or causation.
In Leonard v. Parish of Jefferson, 05-32 (La.App. 5th Cir.4/26/05), 902 So.2d 502, the plaintiff tripped and fell while walking on a sidewalk owned by Jefferson Parish. The parish sought summary judgment on the grounds that the sidewalk did not contain an unreasonably dangerous defect. The trial court granted summary judgment in favor of the parish. At the time of the summary judgment, there was no dispute that the plaintiff had tripped over a sidewalk differential in side by side slabs which measured 1 to 1.3 inches, as evidenced by photographs. Recognizing accepted law that owners of sidewalks have no duty to eliminate all variations in elevations in sidewalks and parking lots and considering the social utility and cost of repairing the single height differential, the court of appeal affirmed the summary judgment in favor of the parish.
In Reitzell v. Pecanland Mall Associates, Ltd., 37,524 (La.App.2d Cir.8/20/03), 852 So.2d 1229, a plaintiff tripped and fell on a place of transition between a handicap ramp and parking lot which had been patched with a black asphalt-like substance. The trial court granted summary judgment in favor of the mall. Recognizing the above-noted law regarding irregularities in streets, sidewalks, and parking lots, this court determined that the patched area did not present an unreasonable risk of harm. In concluding that the pedestrian was required to use caution in navigating the expected risk, the court affirmed the trial court's summary judgment.
In contrast, in Beckham, supra, a patron slipped and fell on an unpaved parking lot after encountering chunks of asphalt. The parking lot was on a slope. The trial court granted summary judgment in favor of the defendant. On appeal, this court reversed the summary judgment because of remaining issues of material fact regarding the "unusual feature" of the parking lot involved in the accident which would "be better assessed at a trial on the merits."
With undisputed facts in this case, the City's duty was to maintain the roadway in a condition that was reasonably safe and did not present an unreasonable risk of harm to pedestrians using the Civic Center and exercising ordinary care and prudence. Under the risk/utility balancing test, the roadway serves a social utility primarily for providing vehicles access to parking around the Civic Center. It additionally, serves a purpose of allowing the pedestrian to walk to and from the Civic Center for the public activities of the facility.
*799 The second factor examines the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition. It was obvious to the plaintiff in stepping off the curb from the adjacent sidewalk that she had entered a gravel/asphalt roadway. The patch in question and other nearby patches were visibly distinguishable from the remainder of the road's surface. The edges of the patchwork would indicate that the surface of the roadway was not entirely smooth around those repaired areas. These facts go to the likelihood of the harm in that the prudent pedestrian understands that she has left a sidewalk area and entered onto the more rough and irregular surface of the roadway. Thus, it is likely that a pedestrian would use greater care and avoid injury. The undisputed fact presented by the City was that it had received no reports of a similar accident in the area of plaintiff's fall.
The third factor focuses on the cost of preventing harm. The cost of some additional repair or repatching of this pothole was not specifically addressed in the record. Yet, for one pothole the cost would not be that great. Nevertheless, as indicated in the ruling in Boyle regarding the maintenance of public sidewalks, the cost of repair to be considered in the risk/utility evaluation "includes not just the minor costs of repairing the single defect in question, but the cost of repairing all similar or worse defects" for the City's roadways and parking lots. Boyle, supra, 685 So.2d at 1083.
Finally, we must consider the nature of the plaintiff's activity in terms of its social utility, or whether it is dangerous by nature. Clearly, the use of the public facility by the plaintiff and all pedestrians has social utility. However, plaintiff greatly increased the pedestrian's risk of tripping by her focus on her nearby grandchildren which, admittedly, distracted her from seeing the patched area of the roadway.
From this review, we find that the irregularity of the repaired area of the roadway where plaintiff tripped did not present an unreasonable risk of harm. The policies emphasized by the Supreme Court in Reed and Boyle likewise are present for consideration of this public asphalt roadway. The City did not owe a duty to plaintiff because, under the undisputed facts of this common roadway setting, the observable irregularity in the road surface did not pose an unreasonable risk of harm.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Dowdy.
AFFIRMED.
DREW, J., dissents and assigns reasons.
DREW, J., dissenting.
As this appears to me to be a comparative liability case, I must respectfully dissent.
NOTES
[1] Jesse Dowdy is now deceased.
[2] Plaintiff's description of the accident was that her foot hit something causing her to trip. She did not say that she stepped on a loose piece of asphalt. The pieces of asphalt shown in the photos taken 5-6 months after the accident were therefore apparently not the cause of the accident and may not have been present at the time of the accident. The variance between the height of the edge of the asphalt patch and the surrounding surface is the asserted cause of the plaintiff's trip and fall.
[3] The complete citations omitted from the above quote include in the order listed, Tillman v. Johnson, 612 So.2d 70 (La. 1993); Entrevia v. Hood, 427 So.2d 1146 (La.1983), Landry v. State, 495 So.2d 1284 (La.1986) and Oster v. Dep't of Transp. and Dev., 582 So.2d 1285 (La.1991).
[4] In addressing the propriety of the summary judgment in Robertson v. State, through Dep't of Planning and Control, 32,309 (La.App.2d Cir. 12/10/99), 747 So.2d 1276, 1279, writ denied, 00-0041 (La.2/25/00), 755 So.2d 882, we observed: "From a pragmatic view, understanding that this suit against the governmental entities will not be tried before a jury, the trial court's decision that Tech did not breach any duty owed to Trey because of the design of the Roof, or the three prior incidences involving the Roof, will be difficult to alter by our remanding the case for determination of an ill-defined fact issue which neither party is now suggesting."