STEWART, J.
|]The City of Shreveport sought supervisory review of a denial of its motion for summary judgment on the claims of plaintiffs, Deborah Dickson (“Deborah”) and David Dickson (“David”), who sued for damages after Deborah tripped and fell on a sidewalk. We granted the City’s writ and docketed the matter for appeal. From our de novo review, we find that there are no genuine issues of material fact and that the City is entitled to summary judgment as a matter of law.
FACTS
On November 29, 2007, Deborah parked her vehicle in a parking lot in the 300 block of Fannin Street in Shreveport. The parking lot is on the south side of Fannin Street and next to Holy Trinity Catholic Church (“Holy Trinity”). After exiting the parking lot, Deborah was walking eastbound along the adjacent sidewalk when she tripped and fell on a part of the sidewalk that traverses a driveway into the parking lot. As a result of her fall, Deborah sustained a fractured tibia and other injuries.
On November 25, 2008, Deborah and David filed suit against the City, alleging that it owns and maintains the sidewalk, that the sidewalk had a defect, and that the City knew or should have known of the sidewalk’s defective condition. The City answered and discovery ensued.
On February 8, 2011, the City filed a motion for summary judgment on the grounds that the condition of the sidewalk was open, obvious, and not unreasonably dangerous and that Deborah simply failed to watch where she was walking. In her deposition, Deborah explained that she stumbled in cracks on the sidewalk and that she could not say which crack first caused |2her to stumble. Deborah stated that she was looking toward the signal *11 light ahead as she walked. In answer to whether she was looking at the sidewalk, Deborah replied, “No. If I’d been, I wouldn’t have fell [sic].”
The City also introduced photographs taken by David of the area where his wife fell. The photographs, photocopies of which are in the record, show what appears to be a crack running the width of the sidewalk, with numerous cracks extending from it and located around it. In the plaintiffs’ discovery responses, which were also offered by the City, they admit to having no knowledge of other incidents in the area and to having no evidence to show that the City knew or should have known of the condition of the sidewalk.
Before its motion for summary judgment was heard, the City amended its answer and supplemented its motion to assert that it did not own, have garde of, or maintain the area of the sidewalk where Deborah fell. The City alleged that Holy Trinity owned and was responsible for maintaining that part of the sidewalk that traverses the driveway into the parking lot. The City offered Holy Trinity’s discovery responses along with deposition excerpts from Jerry Rowe (“Rowe”), Holy Trinity’s representative, and Ernie Neg-rete (“Negrete”), the City’s superintendent of streets and drainage.
Holy Trinity’s discovery responses and Rowe’s deposition established that Holy Trinity owns Lots 12, 18, 14, 15 and 16 of Block 34, that it leases this property to a third person, and that repairs had been made where the fall occurred. However, Holy Trinity did not know who had |Rmade the repairs or when they were made. Rowe stated in his deposition that the City had made repairs in the past to the sidewalk in front of the church and that repairing the sidewalk is not something Holy Trinity would do. Negrete stated in his deposition that the City maintains the sidewalks over which it has a right-of-way but that the property owner has the care, custody, and control over and is responsible for maintaining the driveway into the parking lot.
In opposition to summary judgment, the plaintiffs argued that there are genuine issues of material fact as to whether the defective condition of the sidewalk was open and obvious and should have been observed by Deborah, whether the sidewalk’s defective condition posed an unreasonable risk of harm, and whether the City had constructive knowledge of the defective condition. The plaintiffs offered excerpts from a second deposition given by Deborah, in which she explained that she started walking down the sidewalk and got to where there is “a little drive thing.” She kept walking but was looking to make sure no one was turning into the parking lot, at which point her foot “caught” and she “hit the ground.” When asked about her prior statement that she had been looking at the signal light, Deborah stated that she was “looking at everything but the ground” and that she was looking out to make sure no cars were turning into the parking lot at that busy time of the morning. The City also included Deborah’s statements in her second deposition in support of its motion for summary judgment.
|4The plaintiffs also offered Negrete’s deposition in which he stated that the cracked area of the sidewalk looked like it had been in that condition for a while, perhaps five to seven years, based on the way the area was cracking all over. Neg-rete said it looked like water had infiltrated the cracks and broken down the base. When asked what the City does about such defects in its sidewalks, Negrete explained that there are over 850 miles of sidewalks in the City. The City addresses those defects that citizens report. If there is a defect in an area of a driveway, the City *12 notifies the property owner. If the property owner does not repair the condition and the condition presents a big problem, then the City can barricade the area. Negrete stated that he did not know about the condition of the driveway until contacted about the plaintiffs’ suit, and he was not aware of any discussions between the City and Holy Trinity about the driveway. He could not say whether the sidewalk was subject to heavy pedestrian traffic. He agreed that the cracked sidewalk “could” present a danger to a pedestrian. When asked about repairing the cracked area, Negrete suggested that the entire driveway would have to be repaired to permanently correct the cracked condition. He also indicated that a temporary patch with asphalt would cost only $15 to $30.
In the meantime, Holy Trinity also filed a motion for summary judgment and an exception of prescription. Holy Trinity asserted that there was no evidence that Deborah fell on property it owned. Alternatively, Holy Trinity asserted that it did not have garde over that area because it had | ¡-leased the property to a third party who operated the parking lot and was obligated to maintain it under the terms of the lease.
The trial court heard the motions for summary judgment on November 21, 2011. Finding that its lease with the operator of the parking lot relinquished Holy Trinity of any responsibility for maintaining the area where Deborah fell, the trial court granted Holy Trinity’s motion for summary judgment. However, the trial court denied the City’s motion because it found there to be genuine issues of material fact as to whether the cracked sidewalk was unreasonably dangerous, whether Deborah should have seen it, and whether the City had notice of the defective condition of the sidewalk. The trial court also appeared to have found an issue as to whether the City could be held liable if another entity had the obligation to maintain the parking lot and its driveway.
The City’s writ is now before us for review of the trial court’s denial of its motion for summary judgment.
DISCUSSION
The appellate court’s review of a grant or denial of a summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).
A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, | (¡together with the affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(B); Duncan v. U.S.A.A. Ins. Co., 06-0363 (La.11/29/06), 950 So.2d 544.
On a motion for summary judgment, the mover has the burden of proof. A mover who will not bear the burden of proof at trial on the matter before the court on the motion is not required to negate all essential elements of the adverse party’s claim, action, or defense. Rather, the mover need only point out an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. If the adverse party then fails to produce factual support to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2).
*13 La. C.C. art. 2817 sets forth the principle that we are responsible for the damage caused by things in our custody. This principle is modified by La. C.C. art. 2317.1, which instructs that an owner or custodian of a thing is answerable for damages caused by its defect only upon a showing that he knew, or in the exercise of reasonable care, should have known of the defect, that the damage could have been prevented by the use of reasonable care, and that he failed to exercise such care. Brown v. Williams, 36,868 (La.App.2d Cir.7/31/03), 850 So.2d 1116, writ denied, 03-2445 (La.l1/21/03), 860 So.2d 555.
For a public entity to be liable for damage caused by a defective thing, the plaintiff must also prove that the public entity had actual or 17constructive notice of the defect and a reasonable opportunity to remedy the defect but failed to do so. La. R.S. 9:2800(C).
Thus, the burden is on the plaintiffs to prove that the City, a public entity, had custody or ownership of the defective thing, that the defect created an unreasonable risk of harm, that the public entity had actual or constructive notice of the defect, that it failed to act to correct the defect in a reasonable time, and that the defective thing caused the damages. Chambers v. Village of Moreauville, 11-898 (La.1/24/12), 85 So.3d 593.
The City asserts that the trial court erred in denying its motion for summary judgment because the plaintiffs will not be able to prove that the cracked area of the sidewalk was unreasonably dangerous. The City asserts that the cracked area was open and obvious and that Deborah admitted in her deposition that she was not looking at the ground as she walked along the sidewalk.
The plaintiffs assert that whether the defective condition of the sidewalk was open and obvious is an issue of material fact. They counter that Deborah was acting reasonably by looking out for traffic turning into the parking lot and that she was not required to scrutinize the pavement as she walked. Furthermore, they assert that the City admitted the defect was dangerous and that it would cost a mere $15 to $30 to repair.
Whether a defect presents an unreasonable risk of harm may be resolved on a motion for summary judgment. Dowdy v. City of Monroe, 46,693, p. 11-12 (La.App.2d Cir.11/2/11), 78 So.3d 791, 798, and cases cited therein. The determination of whether a defect presents an [ sunreasonable risk of harm is made by balancing the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Id.; Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080. The ultimate issue is whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Reed, supra; Dowdy, supra.
A public entity is obligated to maintain its sidewalks in a reasonably safe condition. A defect or condition complained of must be one that poses an unreasonable risk of harm to a reasonably careful pedestrian. Boddie v. State, 27,313 (La.App.2d Cir.9/27/95), 661 So.2d 617, citing McDade v. Town of Oak Grove, 545 So.2d 1276 (La.App. 2d Cir.1989); Chambers, supra.
As explained in Dowdy, supra:
The courts have recognized that it is common for the surfaces of streets, sidewalks, and parking lots to be irregular and that it is not the duty of the party having garde of these locations to eliminate all variations in elevations existing *14 along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations because such a requirement would be impossible to meet. This fact alone, however, is insufficient to eliminate the defendant’s liability under the unreasonable risk analysis. Not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
Defendants have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained of condition should have been obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff.
Id., at 5-6, 78 So.3d at 795 (citations omitted).
|flHere, the City relied on Deborah’s depositions to establish the facts about how the accident occurred and David’s photographs taken a short time after the accident to establish the condition of the sidewalk where she fell. The photographs depict an area of the sidewalk with numerous cracks. The cracked area appears to extend all across the sidewalk. It is indisputable that the cracked condition of the concrete sidewalk was open and obvious and that nothing was obstructing Deborah’s view of its condition. Deborah did not state in her deposition that the condition of the sidewalk was not noticeable. Instead, she admitted that she was not looking down as she walked. She stated she was looking ahead toward a signal light and looking out for any vehicles turning into the parking lot. She also candidly admitted that if she had been looking at the sidewalk, she would not have fallen.
While pedestrians are not required to scrutinize a walkway for irregularities, they do have a duty to see what should be seen and to observe whether a pathway is clear. Williams v. Ruben Residential Properties, LLC, 46,040 (La.App.2d Cir.3/2/11), 58 So.3d 534. In Williams, supra, a pedestrian tripped on a buckle in the sidewalk when she was distracted by a honking vehicle. Though photographs taken from different angles indicated that the buckle was prominent, the victim and other witnesses testified that it was not apparent when walking straight down the sidewalk. A trial resulted in a finding, affirmed on appeal, that the defect was not open and obvious and that the plaintiff was not at fault simply because she was | inmomentarily distracted by the passing vehicle and because she waved at people sitting on a nearby porch.
The undisputed facts here established from Deborah’s deposition and photographs taken by her husband show that the condition of the sidewalk was open and obvious and should have been seen by Deborah had she paid even cursory attention to the pathway ahead of her. Deborah was not distracted by anything particular, such as a honking vehicle as in Williams, supra, or even a vehicle turning into the parking lot. Instead, she was, as stated in her depositions, “looking at everything but the ground.”
A balancing of the factors to be considered in determining whether a defect presents an unreasonable risk of harm supports the City’s argument that Deborah will be unable to meet the burden of proving that the cracked sidewalk was unreasonably dangerous. Certainly, the gravity of harm caused by a fall is substantial as shown by the broken tibia suffered by Deborah. However, the plaintiffs have not produced any evidence to show that the condition of the sidewalk posed an unrea *15 sonable risk of injury. The plaintiffs admitted in discovery that they had no evidence of other incidents. Negrete stated in his deposition that the cracks looked like they had been there for five to seven years. The sidewalk traverses a driveway into a downtown parking lot located next to a church, across the street from two courthouses and a bus station, and in the vicinity of other businesses. Thus, it can be considered a frequently traveled sidewalk. Yet, considering the lengthy existence of the defective condition of the sidewalk and its location in a busy downtown area, Deborah appears to be the only person to have | n reported falling there due to the cracks and uneven surface. Though Negrete did state in his deposition that the cracked sidewalk could cause a danger to a pedestrian, the same could be said about almost any crack or height deviation on a surface meant to be walked upon.
One necessary consideration in determining whether a sidewalk defect created an unreasonable risk of harm is the size of the deviation. Chambers, supra. Photographs show that the sidewalk in question contained a number of cracks that created an uneven surface. David took one photograph with a debit card inserted into a crack to show its depth, but no measurements were provided. Moreover, Deborah could not say which crack caused her to stumble and fall.
The social utility of the sidewalk where Deborah fell is high. The parking lot provides convenient parking for individuals visiting the surrounding offices, businesses, and the church. Deborah parked there because she had to report for jury duty at the nearby federal court building. The driveway cut through the sidewalk provides necessary vehicular access to the parking lot, and the sidewalk provides a convenient walkway for pedestrians in the downtown area.
Finally, we come to the cost and feasibility of repair. Though the plaintiffs assert that repair would cost only $15 to $80 dollars, Negrete indicated in his deposition that this is for a temporary asphalt patch. He actually stated that the entire driveway would have to be replaced to correct the defect. Moreover, jurisprudence indicates that the actual cost to be considered is that of repairing all similar defects existing along the City’s | ^sidewalks. See Reed, supra; Boyle, supra; Dowdy, supra. According to Negrete, there are over 850 miles of sidewalk in Shreveport. This means that the real repair cost would be substantially more than $80 dollars.
It is clear from the evidence offered in support of, and in opposition to, summary judgment that the social value and utility of the sidewalk outweighs the risk of harm posed by its cracked condition. This is not a case involving a single deviation that might not be noticeable by a reasonably observant pedestrian. Deborah’s deposition testimony indicates that she stumbled on the uneven surface containing a number of cracks and lost her footing; she could not say exactly which crack caused her to fall. Deborah stumbled and fell due to her inattentiveness to the walkway ahead of her. Because she was looking at everything but the sidewalk, she did not observe the open and obvious condition of the sidewalk.
Based on our de novo review of this record, we find that the plaintiffs will be unable to prove that the cracks in the sidewalk presented an unreasonable risk of harm. The pleadings, depositions, and photographs all show that there is no genuine issue as to material fact and that the City is entitled to summary judgment as a matter of law.
CONCLUSION
For the reasons explained, we grant the City of Shreveport’s writ, reverse the trial *16 court’s denial of summary judgment, and grant summary judgment in favor of the City of Shreveport. The claims of the plaintiffs, Deborah and David Dickson, against the City of Shreveport are hereby | ^dismissed with prejudice. Costs of appeal are assessed against the Dicksons.
WRIT GRANTED. JUDGMENT REVERSED and RENDERED.