CARAWAY, J.
Lin this trip and fall case, the trial court granted the defendant’s motion for summary judgment. Plaintiffs fell in defendant’s casino at a place where the flooring changed from a concrete ramp to a tiled portion of the building, with a slight rise or *932 bump of approximately one-half inch. At the time of their fall, one plaintiff was pushing the other who was seated on a walker which contained a fold-down seat. Our review of the record does not reveal disputed facts concerning the bump in the floor, which we find does not present an unreasonable risk of harm. Accordingly, the judgment of the trial court is affirmed.

Facts

The plaintiffs, Deborah Constantino (“Constantino”) and her elderly mother, Lexine Scherer (“Scherer”), were overnight guests of the Boomtown hotel and casino (“Boomtown”). On October 31, 2007, the plaintiffs were traveling across the indoor walkway that connects Boom-town’s casino to its hotel lobby. Scherer used the aid of a push walker to ambulate. The walker has four wheels and a seat that folds down. On this occasion, when Scherer became tired, she sat down on the walker while Constantino pushed her up the incline toward the hotel lobby. Neither one of them had ever used the walker in this way.
The record indicates that plaintiffs had previously traversed the walkway three times during their stay. At the time of the accident, when they reached the threshold that separates the flooring between the casino and hotel lobby, the plaintiffs allege that the wheels of the walker hit a | ¡¡metal transition strip that connected the two floors, jolting them forward and causing both to fall to the floor. While Constanti-no was able to get up from the fall, her mother remained motionless on the floor until the paramedics arrived. Both plaintiffs allege that they sustained injuries as a result of this accident. Upon the arrival of the paramedics, a picture of the accident site was taken with Scherer lying on a stretcher extending across the transition strip at the place of the irregularity in the floor.
On October 30, 2008, the plaintiffs filed a petition for damages. Thereafter, the defendants filed a motion for summary judgment. Both parties submitted the plaintiffs’ depositions and the plaintiffs’ expert’s deposition. Additionally, the photographs of the accident site and walker were filed. The defendant also submitted the affidavits of two Boomtown employees who reported that the flooring had remained unaltered since it was constructed in 2002 and that no prior tripping accidents had occurred.
Scherer stated in her deposition that upon the “hit, I went over backwards.” From Constantino’s account, she stated that “all of a sudden, she got jolted, and when she got jolted, the wheel — that thing was going backwards.” While the plaintiffs testified that they did not see a defect in the floor, Constantino admitted that her line of view was blocked by her mother. According to Constantino, her mother had never ridden in the walker before, and she will never do so again after this accident.
Knox Tumlin (“Tumlin”) was qualified as the plaintiffs’ expert in this case. Tumlin reviewed the Americans with Disabilities Act (“ADA”) regulations, the site, the current condition of the construction, and |sphotographs of the accident scene, but he did not interview the plaintiffs or examine the walker. Tumlin described the two different defects in the location where Scherer and Constantino fell as follows:
The poured concrete surface has some irregularities, pattern in it, so that there are depressions in the surface. When the tile surface was placed on top of it and the transition strip, in the area where the lady is shown to be mobilized and believe to have fallen, the transition strip cuts across this irregularity. This creates two problems. First of all, the ADA Codes require that flooring surfaces in the path of travel and accessible *933 route be hard, stable, and regular. The surface is not — the surface is not regular in that location in relation to the rest of the floor transition.... Secondly, at the part where it is regular where it is believed that she has fallen, there is an increased depth where a wheel from a wheelchair, a cane, or someone’s foot would hit, causing a misstep, a jolting of a chair.
Tumlin did not measure the irregular depth (the “bump”) at the placement of the transition strip. He stated that the transition strip and floor tile would have complied with the ADA Code had the non-tiled surface been regular all the way across. Yet, he identified an irregular place in that surface. According to him, the concrete slab was “poured with a depression pattern in it. A visual, a — something that somebody thought looked good.” He believed that it “represents an impediment to people who require — because of disability an ADA accessible route.” While Tumlin testified that a wheelchair would have jolted at this location, he could not say whether it would tip and cause the occupant to fall. At one point, he estimated the irregular dip in the non-tiled surface as “less than a quarter” inch. However, he also indicated at another point in his testimony that the overall rise between the two surfaces may have been one-half inch or more. Without an accurate measurement, his testimony is not clear.
^Without being provided a definition of unreasonably dangerous, Tumlin refused to testify to more than that the condition presents a hazard to the “public that requires accessible access” by violating Article 4.5 and Section 303.3 of the ADA. Lastly, Tumlin testified that he considered the condition a design implementation problem rather than a construction problem.
In granting the defendant’s motion for summary judgment, the trial court placed emphasis on the number of people who had traversed the transition strip since 2002. In the ten years since the walkway was constructed, the plaintiffs could not point to a single accident despite the multiple people, presumably some with wheelchairs, walkers, and crutches, who had encountered this defect. The plaintiffs now appeal the trial court’s dismissal of their claims.

Discussion

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C. art. 966 A(2). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C. art. 966 B(2). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion |sfor summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C. art. 966 C(2).
We review the grant of a motion for summary judgment de novo. Schroeder v. *934 Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Dowdy v. City of Monroe, 46,693 (La.App.2d Cir.11/2/11), 78 So.3d 791. A fact is material it if potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. King v. Illinois Nat. Ins. Co., 08-1491 (La.4/3/09), 9 So.3d 780; Dowdy, supra at 794.
The Louisiana Merchant Liability Statute, La. R.S. 9:2800.6, provides that:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an |fiinjury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of this cause of action, all of the following:
1. The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
2. The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence
3.The merchant failed to exercise reasonable care. In determining care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone to prove failure to exercise reasonable care.
Failure to prove any of the requirements enumerated in La. R.S. 9:2800.6 will prove fatal to the plaintiffs case. Harrison v. Horseshoe Entertainment, 36,294 (La.App.2d Cir. 8/14/02), 823 So.2d 1124; Richardson v. Louisiana-1 Gaming, 10-262 (La.App.5th Cir.12/14/10), 55 So.3d 893.
The mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition. Milton v. E & M Oil Co., 45,528 (La.App.2d Cir.9/22/10), 47 So.3d 1091, 1095. In determining whether a defect presents an unreasonable risk of harm, courts have adopted a four-part test. This test requires consideration of:
1) the utility of the complained-of condition;
2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition;
3) the cost of preventing the harm; and
4) the nature of the plaintiffs activities in terms of its social utility, or whether it is dangerous by nature.
Dowdy, supra at 795.[1] Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Entrevia v. Hood, 427 So.2d 1146 (La.1986); Dowdy, supra.
*935 There is one photo in the record which shows the slight rise or bump in the floor and the transition strip where the accident occurred. The same photo also shows Scherer lying on the stretcher on the floor. There is no close-up photo showing the actual difference in the height between the two levels of the floor. Tumlin indicates that the bump occurs because of the use of large tile on one side of the line and the apparent absence of tile on the other side. The photo shows the so-called transition strip which is a visible white strip on the brown colored flooring. The transition strip is placed at the right angle between the two levels of the floor in an effort to make that angle less abrupt and to act as a mini-ramp between the two levels. Nevertheless, this is a description based largely on what the photo shows from a distance. The plaintiffs’ opposition evidence, including Tumlin’s deposition, never provides an accurate measure of this bump or reveals the angle of the transition strip which was the device used to smooth out the bump. Tumlin merely estimated the height of the bump at approximately one-half inch, and the picture does not indicate a greater height.
Dowdy, supra, concerned a trip and fall accident on an asphalt roadway in a parking lot of a public building. Summary judgment had been granted by the trial court in favor of the defendant. The facts of the accident, including the photograph of the surface irregularity, and the commonality of such hole in the asphalt showed that the alleged trip | ^obstacle was undisputedly established in the evidence produced by the motion for summary judgment. This court therefore decided the issue of whether an unreasonable risk of harm was present stating that “[t]he court is charged legislatively by this favored [summary judgment] procedure to determine the legal significance of the undisputed facts.” Id. at 797-798.
In this case, we find the facts concerning the place of plaintiffs’ fall, the configuration of the transition strip and the bump in the flooring to be well presented by the evidence. The plaintiffs would bear the burden of proving that the bump in the surface presented an unreasonable risk of harm. They and their expert did not demonstrate that the rise between the two surfaces was greater than one-half inch.
Applying the risk/utility balancing test, the complained-of condition exists because of the transition between the two portions of the casino facilities, the casino itself and the hotel lobby. The walkway had a slope leading up to the transition point between the two internal structures within the complex. Importantly, plaintiffs’ expert did not consider this bump as a defective construction of the building. We would therefore view this transition in the flooring as a feature with ordinary utility within a complex indoor structure.
The next and more significant measure in this case is the likelihood and magnitude of the harm, which includes the bump’s obviousness for the casino’s patrons. As a transition point from the walkway into the lobby, the slight rise between the surfaces might reasonably be expected and seen. The height of the bump is not unlike an unevenness in flooring created by |flthe sill at the threshold of a door. The slope of the metal transition strip was to smooth out to some extent the change in the two levels of the flooring. From the photo of the transition strip, its white line across the flooring is clearly distinct in relation to the two types of flooring that meet on either side. Finally, the defense established that no trip and fall accidents had occurred at this location. All of this indicates a small likelihood for trip and fall accidents and injury at this obvious transition point in the building.
Finally, it is significant that, using her walker as a walker, Scherer had not expe *936 rienced any prior problems traversing this place in the building. The photos of the walker in the record circumstantially indicate that its relatively small wheels (approximately 5 inches in diameter or less) were not designed for transporting a person. Yet, plaintiffs presented no opposition evidence showing that they were using the walker in its intended manner of use. This leads to the conclusion, in answer to the fourth measure of the risk/utility test, that the nature of the plaintiffs’ activities at the time of the accident was out of the ordinary, posing the dangers caused by the limited field of vision of Constantino and the small wheels of the walker.
Regarding the additional point raised by plaintiffs’ expert concerning the ADA, their brief to this court has not backed up that opinion by citation and legal argument concerning that federal law. Thus, we do not have an assertion in brief regarding the measure of a violation under the ADA. Factually, from the record, it is not shown that all access routes generally into the hotel facilities at Boomtown were in violation of the ADA. Last, as |10noted above, the questionable mode of transport of Scherer as a disabled person was not addressed by Tumlin as he avoided any discussion of the use of this walker as a type of makeshift wheelchair.
From this review, we find that the “bump,” the transition in the levels of the floor upon entering into the hotel lobby, did not present an unreasonable risk of harm.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of these proceedings are assessed to appellants.
AFFIRMED.

. We note that the utility/risk test is applicable to the measure for fault under La. C.C. art. 2317.1 which coincides with the merchant liability statute for the alleged trip hazard in this case created by the building's construction.