STEWART, J.
 

 _JjIn this trip and fall case, Plaintiff/Appellant, Mildred Watts, is appealing a judgment rendered in favor of the Defendants/Appellees, Scottsdale Insurance Company and Tom McFarland d/b/a Coun
 
 *268
 
 try Place Restaurant (“defendants”). The trial court found that the metal strip was open and obvious and did not present an unreasonable risk of harm. For the reasons discussed below, we affirm the lower court’s ruling as amended.
 

 FACTS
 

 On October 1, 2006, Mildred Watts tripped over a strip of metal while attempting to enter The Country Place Restaurant in Minden, Louisiana. The strip of metal was located in front of two circular stones that were located in a path from the parking lot to the restaurant’s entrance. Watts, who was 82 years old at the time of the fall, sustained serious injuries to her mouth and teeth as a result of the accident.
 

 On January 10, 2007, a little more than three months after she fell, Watts filed a petition for damages. The trial court determined that the metal strip was open and obvious, did not present an unreasonable risk of harm, and that “no legal duty can be imposed on the defendant.”
 

 After the trial, Watts learned that the insurance policy written by Scottsdale Insurance Company contained a medical provision. She requested the policy in formal discovery, but the defendants did not comply with the request. Rather, they stipulated to coverage and omitted any reference to the medical pay provisions. For this reason, she filed a motion for a new trial. The trial court denied this motion, finding that “it would 12seem that there was ample time for plaintiff to have obtained a copy of the insurance policy.”
 

 Watts now appeals, asserting five assignments of error.
 

 LAW AND DISCUSSION
 

 Liability
 

 Watts’s claim is governed by La. R.S. 9:2800.6, which provides in pertinent part:
 

 A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
 

 B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
 

 (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
 

 (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
 

 (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
 

 Additionally, La. C.C. art. 2317.1 states:
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from
 
 *269
 
 the ^application of the doctrine of res ipsa loquitur in an appropriate case.
 

 In the first assignment, Watts argues that the trial court erroneously analyzed what constitutes an unreasonable risk of harm. More specifically, Watts contends that the trial court erred when it “simply determined that the metal strip that she tripped on was visible.” Watts alleges in the second assignment of error that the trial court erred in determining that the thin strip of metal that she tripped on was an open and obvious condition. Since both assignments of error relate to whether the defendants are liable for the injuries that Watts sustained as a result of her fall, we will address these interrelated assignments together.
 

 There is no fixed rule for determining whether the thing presents an unreasonable risk of harm.
 
 Beckham v. Jungle Gym, L.L.C.
 
 45,325 (La.App. 2 Cir. 5/19/10), 37 So.3d 564, 2010 WL 1981562. Whether a particular risk is unreasonable is a difficult question which requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention.
 
 Pitre v. Louisiana Tech University,
 
 95-1466 (La.5/10/96), 673 So.2d 585. It is the court’s obligation to decide which risks are unreasonable, based upon the facts and circumstances of each case.
 
 Pitre, supra.
 

 The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of the repair.
 
 Beckham, supra.
 
 Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify its potential harm to others.
 
 Id.
 

 [4The obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis.
 
 Pitre, supra.
 
 If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.
 
 Id.
 

 Watts testified that she always walked across this area to enter the restaurant. She also admitted that she had seen the metal border that caused her to trip on October 1, 2006, on previous occasions when she patronized the restaurant. Watts stated that she had never tripped while walking across this area in the past.
 

 The owner of Country Place Restaurant, Tom McFarland, testified that the metal strip at issue is the border of a flower bed that had been in place for as long as he had owned the restaurant, which was nine years at the time of the accident. He also stated that no one had ever tripped over this metal strip or made a claim similar to Watts’s claim. He also recognized the stones located in and around the flower bed as decorative stones and not stepping stones. McFarland stated that he never encouraged patrons to use this area as a means of entering the restaurant. Rather, he encouraged them to use the entrance to the restaurant, which is adjacent to the handicap space near the upper parking lot.
 

 McFarland had no notice of any prior incidents involving a patron tripping over the metal strip bordering the flower bed. McFarland testified that the border stood about four inches tall. The border was clearly visible Rto the naked eye. Watts did not state that anything obstructed her view on the day that she fell.
 

 We disagree with Watts’s contention that the metal strip was not “open and obvious” because the metal strip is dark brown/green color, and is located in a shaded area among brown dirt and green
 
 *270
 
 weed. She overlooked the fact that the border was four inches above the ground and her admission that she was well aware of the location of the metal strip. She erroneously urged that this metal strip serves no other purpose than to trip pedestrians. The metal strip was actually a border around the flower bed at the time in an area that was not designated as a walkway.
 

 Based on these facts, we agree with the trial court’s determination that the metal strip was open and obvious and did not present an unreasonable risk harm. Watts failed to prove the necessary elements required to support her liability claim pursuant to La. R.S. 9:2800.6(B) or La. C.C. art. 2317.1, we cannot impose any legal duty upon the defendants. Therefore, these two assignments of error have no merit.
 

 Medical Payments Award
 

 In the third assignment of error, Watts urges that the trial court erred in failing to award the medical payments limits of the defendants’ policy and in failing to award penalties for their failure to disclose the medical provisions of their policy.
 

 The medical provisions in the defendants’ policy state:
 

 COVERAGE C MEDICAL PAYMENTS
 

 a. We will pay medical expenses as described below for “bodily injury” caused by an accident:
 

 | fi(l) On premises you own or rent;
 

 (2) On ways next to premises you own or rent; or
 

 (3) Because of your operations; provided that:
 

 (1) The accident takes place in the “coverage territory” and during the policy period;
 

 (2) The expenses are incurred and reported to us within one year of the date of the accident; ...
 

 (3) The injured person submits to the examination, at our expense, by physicians of our choice as often as we reasonably require.
 

 b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
 

 (1) First aid administered at the time of the accident;
 

 (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
 

 (3) Necessary ambulance, hospital, professional nursing and funeral services.”
 

 The policy also contained the following amendment:
 

 It is agreed that as of the effective date hereof, the policy is hereby amended in the following particulars:
 

 AMEND FORM CLS-SD-IL (08/01) TO SHOW MEDICAL PAYMENTS LIMIT AND PERSONAL AND ADV LIMITS AS FOLLOWS IN LIEU OF WHAT IS SHOWN:
 

 MEDICAL PAYMENTS: $5,000 PERS & ADV INJ: $1,000,000
 

 As stated in the facts section, the accident occurred on October 1, 2006, and the petition was filed on January 10, 2007. The petition |7expressed Watts’s entitlement to damages, and the memorandum provided a detailed list of the medical expenses that she incurred as a result of her fall.
 

 
 *271
 
 Advanced EMS, Inc. $ 665.00 (Plaintiffs Exhibit No. 7)
 

 Minden Medical Center $1,456.67 (Plaintiffs Exhibit No. 8)
 

 Minden Family Medicine $ 94.58 (Plaintiffs Exhibit No. 9)
 

 James C. Palmer $5,729.00 (Plaintiffs Exhibit No. 10)
 

 TOTAL $7,945.25
 

 Additionally, on May 2, 2007, Watts’s counsel propounded her first set of requests for production of documents to the defendants, which requested “any policy of insurance which may provide coverage for you on the date of the incident or which may provide coverage for the incident or claim for injuries.” Based on this information, we can determine that Watts’s incurred expenses were reported to the defendants within one year of the date of the accident.
 

 During oral arguments held at this court, the defendants’ counsel stated that they do not contest that the medical payments are due. The defendants’ insurance policy contains a $5,000.00 limit of liability for medical payments. We thereby order the defendants to pay Watts $5,000.00 plus interest, for the medical expenses that she incurred.
 

 Items of special damages must be specifically pled. La. C.C.P. art. 861. Statutory penalties and attorney fees are items of special damages which must be specifically alleged.
 
 Wiley v. McDay,
 
 34,-985 (La.App. 2 Cir. 10/31/01), 799 So.2d 624;
 
 Dennis v. Allstate Insurance Company,
 
 94-305 (La.App. 5 Cir. 10/25/94), 645 So.2d 763. Generally, a trial court may not award special damages which have not been specifically plead. The |spurpose of the specificity requirement is to avoid the imposition of surprise upon the defendant.
 
 Wiley, supra.
 

 In this case, Watts did not allege or pray for penalties for the defendants’ failure to disclose the medical provisions of their policy in her petition. Penalties are items of special damages and must be specifically alleged. Since Watts failed to do so, recovery cannot be allowed for this item.
 

 Motion For A New Trial
 

 In the fourth assignment, Watts contends, in the alternative, that the trial court erred in not granting a new trial for the purpose of allowing consideration of the medical payments provisions in the defendants’ insurance policy and for the purpose of awarding medical payments. In the fifth and final assignment of error, Watts alternatively argues that the trial court erred in not granting a new trial in order to determine if penalties are due for the defendants’ failure to disclose the medical payments provisions of its policy. Since both of these assignments of error involve Watts’s motion for a new trial on the basis of the medical payments provision in the defendants’ insurance policy, we will address these issues together.
 

 La. C.C.P. art. 1972(2) states in pertinent part:
 

 A new trial shall be granted, upon contradictory motion of any party, in the following cases:
 

 (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. (Emphasis added.)
 

 When Watts learned that the Scottsdale policy included a medical payments provision, she filed a motion for a new trial on the basis of newly |9discovered evidence. She also filed a rule to show cause, seeking penalties pursuant to La. R.S. 22:1973, which states in pertinent part:
 

 B. Any one of the following acts, if knowingly committed or performed by
 
 *272
 
 an insurer, constitutes a breach of the insurer’s duties imposed in Subsection A:
 

 (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
 

 C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose for setting rates or making rate filings.
 

 The trial court denied the motion for a new trial after determining that “there was ample time for plaintiff to have obtained a copy of the insurance policy.” We agree. As stated above, the accident occurred on October 1, 2006, and the petition was filed on January 10, 2007. The trial did not take place until June 4, 2009. The trial court was not erroneous in determining that Watts had enough time to obtain a copy of the insurance policy pursuant to La. C.C.P. art. 1972(2).
 

 Watts argues that a reasonable effort was made to discover the contents of the policy. Her counsel propounded her first set of requests for production of documents to the defendants, which requested “any policy of insurance which may provide coverage for you on the date of the incident or which may provide coverage for the incident or claim for injuries.” We note that Watts’s counsel did not attempt to obtain a copy of the policy formally via Rule 10, nor did he attempt to contact the defendants’ counsel in order | i0to obtain a copy of the policy. Rather, he waited until after trial to request the policy, at which time the defendants’ counsel provided it to him in its entirety.
 

 These facts reveal that Watts’s counsel did not exercise due diligence in attempting to obtain the policy. Therefore, the trial court did not erroneously deny Watts’s motion for a new trial for the purpose of allowing consideration of the medical payments provisions in the defendants’ insurance policy and for the purpose of awarding medical payments, nor did it err in not granting a new trial in order to determine if penalties are due for the defendants’ failure to disclose the medical payments provisions of its policy. Watts’s fourth and fifth assignments of error are meritless.
 

 CONCLUSION
 

 For the aforementioned reasons, we amend the judgment to order the defendants to pay Watts $5,000.00, plus interest, for the medical expenses that she incurred as a result of the fall and affirm the lower court’s judgment as amended. We assess 3/4 of the costs against the appellant, Mildred Watts, and 1/4 against the defendants.
 

 AFFIRMED AS AMENDED.