LILJEBERG, J.
*339 Plaintiffs appeal a summary judgment rendered in favor of defendants, dismissing plaintiffs' lawsuit against them. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
This case arises from a slip and fall accident that occurred in front of plaintiffs' home, located at 1902 Hancock Street in Gretna, at approximately 4:30 p.m. on July 10, 2014. At the time of the accident, plaintiff, Ray Eskine, was 58 years old, permanently disabled, and required a walker to walk around. According to Mr. Eskine, he wanted to see how high the grass was on his lot across the street, so he began to traverse an elevated walkway over a drainage ditch in front of his house, when the front left wheel of his walker slipped or rolled off the left side of the walkway, causing Mr. Eskine to fall into the ditch and suffer personal injuries.
Mr. Eskine and his wife, Sondra Eskine, filed this lawsuit against the City of Gretna ("Gretna") and its liability insurer, Atlantic Specialty Insurance Company ("Atlantic"), alleging that the walkway over the drainage ditch, which extends from the sidewalk to the street, was defective and presented an unreasonably dangerous condition. They asserted that the walkway was in the care, custody, and control of Gretna, and that Gretna had actual and constructive knowledge of the defective condition of the walkway. Thus, plaintiffs sought damages from these defendants for the injuries sustained by Mr. Eskine.
Defendants answered the lawsuit and subsequently filed a motion for summary judgment, seeking dismissal of plaintiffs' claims against them. In their motion for summary judgment, Gretna and Atlantic asserted that they are entitled to summary judgment, because plaintiffs cannot show that the alleged condition of the walkway created an unreasonable risk of harm. Further, they asserted that the condition of the walkway was open and obvious, and that Mr. Eskine did not exercise reasonable care. In support of their motion for summary judgment, defendants submitted several exhibits, including photographs, excerpts from the deposition testimony of both plaintiffs and Mr. Eskine's doctor, as well as an affidavit and excerpts from the deposition testimony of Daniel Lasyone, the Director of Public Works for Gretna.
In his deposition, Mr. Eskine testified that he grew up at 1902 Hancock Street and has lived there for "just about" his whole life. He stated that he became disabled and began using his walker approximately 20 years ago. Mr. Eskine stated that the walkway where he fell was constructed approximately 30 years ago, and asphalt was put on the walkway approximately 20-25 years ago when the street was repaved. According to Mr. Eskine, the walkway was defective because it was too narrow, had too much slope and angle, was uneven and concave, and the asphalt was brittle and breaking off. Mr. Eskine testified that the defective condition of the *340 walkway existed for 20-25 years, and the asphalt started crackling and crumbling at least 15 years prior to his fall. He testified that Gretna employees have been around the property and should have noticed this defective condition and repaired it before the accident. Mr. Eskine admitted that he was aware of the "deteriorated condition" of the walkway before the fall, noting "[y]ou can look at it and see." Mr. Eskine stated that he would typically avoid using the walkway due to its defective condition, and he would use the driveway instead to approach the street. In fact, he stated that he only walked across this walkway two or three times in 20 years.
Mr. Eskine stated that on the day of the accident, it had just stopped raining when he decided to check on the grass at his lot across the street. At the time of the accident, Mrs. Eskine's truck was parked at the end of the driveway and was blocking it, so he decided to use the walkway and not approach the street via the driveway, as he normally would. He admitted that he could have used an alternate route, but "it's a long walk to go all the way around there" and he decided to "go ahead and get out." He stated that at the time of his fall, there was nothing preventing him from seeing the alleged defective condition of the walkway or the path he was using.
In Sondra Eskine's deposition, she stated that she has lived at 1902 Hancock Street for at least 30 years and that the walkway over the drainage ditch had been in an obvious deteriorated condition for several years prior to Mr. Eskine's fall. She stated that Gretna employees, such as those who came out to "read the meter" each month, should have noticed that the walkway was defective. Mrs. Eskine testified that Mr. Eskine has a "frequency to fall" and that his legs "give out on him," so she tells him to let someone know when he is going down the steps or off the porch. On the day of the accident, Mr. Eskine did not tell anyone he was leaving the porch. Prior to the accident, Mrs. Eskine used the walkway twice a week to put out their garbage cans, but Mr. Eskine would typically use the driveway to go to the street because it is wider and safer. Mrs. Eskine testified that she had parked her blue truck on the street, blocking the driveway, on the day of the accident, because she was lending the truck to someone who "won't back out the driveway."
In the affidavit of Daniel Lasyone, the Director of Public Works for Gretna, he stated that Gretna did not receive or have any knowledge of any complaints regarding the walkway condition prior to the incident that is the subject of this lawsuit.
Plaintiffs filed a memorandum in opposition to defendants' motion for summary judgment, arguing that although they knew the walkway was defective, the defective condition of the walkway was not open and obvious to everyone who encountered it. They argued that the width of the walkway was less than 48 inches and the flat surface was less than 23 inches, which is in violation of Gretna's Code of Ordinances, and Mr. Eskine was not aware that the walkway did not comply with the city requirements. They also argued that the defective condition of the walkway could not have been open and obvious, because Gretna employees who cut grass, cleaned the ditches, and read the water meters never reported it.
In support of their position, plaintiffs each submitted an affidavit, in which they indicated that they were not aware prior to the accident that the walkway was required to be 48 inches in width. They both stated that they did not measure the width of the walkway prior to the accident, and did not know it was only 39 inches until April of 2017. Plaintiffs also submitted an affidavit from Nick Cammarata, who is a *341 registered professional engineer. In his affidavit, Mr. Cammarata stated that the width of the flat top surface of the walkway is only 18-20 inches, and the front wheels of Mr. Eskine's walker are 22 inches apart. Mr. Cammarata opined that the limited flat surface of 18-20 inches did not comply with various building codes or accessibility standards and was not open and obvious.
The trial court held a hearing on defendant's motion for summary judgment on June 27, 2017. After counsel for the parties introduced evidence and made their arguments on the record, the trial judge granted summary judgment in favor of defendants, finding that "the condition was open and obvious." Thereafter, on July 6, 2017, the trial judge signed a written judgment, granting defendants' motion for summary judgment and dismissing plaintiffs' claims against them with prejudice. It is from this judgment that plaintiffs have filed the instant appeal.
LAW AND DISCUSSION
On appeal, plaintiffs argue that the trial court erred by granting summary judgment in favor of defendants. They assert that there was a hidden defect in the walkway, as it was not apparent that the flat top surface of the walkway was only 18-20 inches in width. Plaintiffs assert that the defective condition of the walkway was not open and obvious, noting that no Gretna employee ever reported it, despite their duty to report dangerous conditions on city property.
Defendants respond that a complained-of condition does not present an unreasonable risk of harm if that condition should be open and obvious to all who exercise reasonable care. They argue that Mr. Eskine admitted there was nothing preventing him from seeing the walkway at the time of his fall, and that he failed to exercise reasonable care when he attempted to traverse the walkway.
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University , 591 So.2d 342, 345 (La. 1991) ; Stone v. Lakes of Chateau North, L.L.C. , 16-529 (La. App. 5 Cir. 12/14/16), 208 So.3d 1053, 1057, writ denied , 17-87 (La. 2/24/17), 216 So.3d 59. Summary judgment will be granted if the motion, memoranda, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Luther v. IOM Co., L.L.C. , 13-353 (La. 10/15/13), 130 So.3d 817, 822. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point to an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or to prove that the mover is not entitled to judgment as a matter of law. Id.
In determining whether a genuine issue of material fact exists, we must consider the substantive law governing the litigation. In actions against a public entity, the plaintiff must show that the thing *342 which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, that defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was the cause in fact of plaintiff's injuries. Casborn v. Jefferson Par. Hosp. Dist. No. 1 , 11-1020 (La. App. 5 Cir. 5/22/12), 96 So.3d 540, 543. Courts have adopted a risk-utility balancing test to determine whether a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and risk of harm against the individual and societal utility and the costs and feasibility of repair. Chambers v. Village of Moreauville , 11-898 (La. 1/24/12), 85 So.3d 593, 597-98.
Defendants generally have no duty to protect against an open and obvious hazard. Eisenhardt v. Snook , 08-1287 (La. 3/17/09), 8 So.3d 541, 544. The obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. Pitre v. Louisiana Tech University , 95-1466 (La. 5/10/96), 673 So.2d 585, 590 ; Watts v. Scottsdale Ins. Co. , 45,397 (La. App. 2 Cir. 6/30/10), 43 So.3d 266, 269. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendants may owe no duty to the plaintiff. Eisenhardt , supra ; Watts , supra .
A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care. Handy v. City of Kenner , 12-135 (La. App. 5 Cir. 6/28/12), 97 So.3d 539, 542. Summary judgment is not precluded in cases where the plaintiff is unable to produce factual support for his claim that a complained-of condition is unreasonably dangerous. Allen v. Lockwood , 14-1724 (La. 2/13/15), 156 So.3d 650, 652.
In opposition to defendants' motion for summary judgment, plaintiffs cite Broussard v. State, through Office of State Bldgs. Div. of Admin. , 12-1238 (La. 4/5/13), 113 So.3d 175, 188, in which the Louisiana Supreme Court held that in order to be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition. They argue that even though Mr. Eskine thought the walkway was defective, the defective condition was not open and obvious to everyone who encountered it. Further, he argues that it was not open and obvious, even to him, that the walkway did not meet the requirements of the city ordinances.
The Broussard case involved an elevator that malfunctioned and caused a misalignment of one and one-half inches in an office building owned by the State. Although Mr. Broussard himself was familiar with the building and knew its elevators intermittently stopped at a level uneven with the building's floors, the Court found that a reasonable basis existed to support the jury's determination that a one and one-half inch offset between the floor of the elevator and the floor of the building's lobby presented an unreasonable risk of harm. Broussard , 113 So.3d at 193-94. The Court noted that it was "not addressing an ordinary slip and fall case, wherein we generally state pedestrians must exercise ordinary care, keeping in mind irregularities frequently exist in sidewalks." Id. at 187. In finding the condition of the elevator to be an unreasonable risk of harm that was not open and obvious to all, the Court noted that there is a heightened degree of care upon elevator owners and that "pedestrians do not ordinarily anticipate irregularities, such as the offset in question, when entering and exiting elevators." Broussard , 113 So.3d at 187.
*343 In support of their position that they are entitled to summary judgment, defendants cite the post- Broussard case of Bufkin v. Felipe's La., L.L.C. , 14-288 (La. 10/15/14), 171 So.3d 851, in which the Louisiana Supreme Court considered whether a construction dumpster was an open and obvious hazard or posed an unreasonable risk of harm, and found that summary judgment in favor of the defendant was appropriate. In Bufkin , the plaintiff was a pedestrian who collided with a bicyclist when he stepped out into the street from behind a construction dumpster that had been placed near the sidewalk. The plaintiffs filed suit against the contractor who placed the dumpster, claiming that the dumpster blocked his vision and created an unreasonable risk of harm. The Louisiana Supreme Court decided that the contractor was entitled to summary judgment, finding that any vision obstruction caused by the dumpster to a pedestrian crossing the street was obvious, apparent, and reasonably safe for persons exercising ordinary care and prudence. Bufkin , 171 So.3d at 858.
Recently, in Morel v. Cheema Props., L.L.C. , 16-666 (La. App. 5 Cir. 4/12/17), 216 So.3d 383, writ denied , 17-787 (La. 9/22/17), 228 So.3d 742, this Court addressed a similar issue and affirmed a summary judgment granted in favor of defendant. In Morel , an elderly plaintiff who walked with a cane was injured when she tripped and fell on a hose at a gas station. In her deposition, Mrs. Morel stated that she frequently went to this gas station and always went inside to pay for her gas before pumping it. On the morning that she fell, she noticed two hoses next to the curb in front of the store where she had to go in. According to Ms. Morel, when she exited the store, the two hoses were separated, which created a "problem" for her to cross with her cane. After unsuccessfully looking for another path and trying to move the hoses with her cane, Ms. Morel decided to go forward with her cane over the hoses, because she had "things to do." As she tried to step over the hoses, Ms. Morel's right foot "caught the hose" and caused her to fall and sustain injuries. Morel , 216 So.3d at 384.
In Morel , defendants moved for summary judgment arguing that the hoses were open, obvious, and plainly visible to all who encountered them and, thus, they did not pose an unreasonable risk of harm to persons exercising ordinary care for their own safety. The trial court granted summary judgment, finding that the hoses were open and obvious. On appeal, this Court affirmed, stating:
...it was plaintiff's impatience, not defendant's failure to warn of an alleged hazard, which caused plaintiff to fall. The most significant undisputed fact in this case is that plaintiff saw the hoses and was aware that the hoses could cause her to fall. Given her physical limitations, a prudent person would have exercised whatever caution was necessary under the circumstances to avoid the risk she recognized was created by the alleged hazard.
Morel , 216 So.3d at 388.
In the present case, like the plaintiff in Morel , Mr. Eskine had mobility issues. He testified that he was permanently disabled and had used a walker for approximately 20 years. Unlike Morel , where the alleged defective condition was not always present, Mr. Eskine was aware of the location and condition of the walkway in front of his house, where he had lived all of his life. Mr. Eskine testified that he was aware of the "deteriorated condition" of the walkway before the fall, noting "[y]ou can look at it and see." According to Mr. Eskine, he would usually use the driveway to approach the street instead of the walkway, due to its defective *344 condition, and he had only walked across this walkway two or three times in 20 years. Although Mr. Eskine was not aware of the width requirements or the precise width of the walkway or its flat surface, there was no evidence that his view of the walkway was obstructed or that there was any hidden defect. Mr. Eskine, or anyone who encountered the walkway, could see how wide the walkway was before deciding whether to cross at that location.
Mr. Eskine, who had physical limitations, used a walker, and typically used an alternate route to approach the street due to the walkway's condition, should not have attempted to cross the walkway with his walker. Mr. Eskine asserts that the walkway width was unknown to him when he attempted to cross it. The width between the front wheels of the walker, approximately 22 inches, was apparently too great for him to successfully cross the walkway. A prudent person would have exercised whatever caution was necessary under the circumstances to avoid the risk created by the alleged hazard.
Based on our de novo review of the memoranda in support of and in opposition to the motion for summary judgment, along with the exhibits and the applicable law, we find no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. Accordingly, we agree with the trial court's decision to grant defendants' motion for summary judgment and dismiss plaintiffs' case against them.
DECREE
For the foregoing reasons, we affirm the summary judgment granted in favor of defendants, dismissing plaintiffs' claims against them.
AFFIRMED